# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| DONALD JOHNSON, )<br>a/k/a Donald Cooley, )<br>  )<br>Plaintiff, )<br>  )<br>v. )<br>  )<br>LARRY DOYLE, et al., )<br>  )<br>Defendants. ) | No. 4:07CV1843 AGF |

## MEMORANDUM AND ORDER

Plaintiff, a pretrial detainee at all times relevant to the complaint, brought suit against officials of the Lincoln County Jail under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment. Plaintiff alleged that Defendants were deliberately indifferent to his safety and his serious medical needs. Defendants Larry Doyle, Scott Bonney, Jeff Holdmeyer, Michael Korte, Diane Cockrell, Dan Manhardt, Tom Duncan, Lynn Park, Lindell Riffel, and Lincoln County, Missouri, have moved for summary judgment. On review of the materials before the Court, the Court finds that the motion should be granted in part and denied in part.

## STANDARD

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. Crossley v. Georgia-Pac. Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. Armour and Co. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

# BACKGROUND

In 1983, Plaintiff was severely injured when he fell eight stories from a grain silo in a job-related accident. Plaintiff's leg was broken in five places, several of his vertebrae were fractured, and one of his heels was crushed. As a result of his injuries, Plaintiff underwent multiple surgeries in which steel screws and a plate were placed in his leg and rods were placed in his spine. In 1988 an administrative law judge found that Plaintiff was disabled under the Social Security Act.

Plaintiff was treated by Dr. Rachel A. Feinberg and her medical practice, Injury Specialists, from January 16, 2001, until shortly before his incarceration in 2006. Dr. Feinberg diagnosed Plaintiff as suffering from a "complex chronic pain problem," which resulted from the injuries he sustained in the fall. Pl.'s Ex. P at 18-19.

Plaintiff was detained at Lincoln County Jail (the "Jail") beginning April 26, 2006. When Plaintiff was admitted to the Jail, he was on a duragesic (narcotic) pain patch and hydrocodone (an oral narcotic), as well as a mood stabilizer and other medications. The narcotics had been prescribed by Dr. Feinberg for Plaintiff's chronic pain. Plaintiff brought his medications, including the duragesic patch and the hydrocodone, to the Jail.

Plaintiff's medications were confiscated by the booking officer on his arrival. Plaintiff told the booking officer that he felt he was beginning to have withdrawal symptoms before he entered the Jail because he was due to change his duragesic patch on the day of his arrival at the Jail.

Dr. Feinberg faxed a copy of Plaintiff's medical records to the Jail. The records documented, among other things, Plaintiff's medical history and his prescription medications.

Plaintiff met with Defendant Park, the Jail's nurse, on April 27, 2006.[1] Park, who is a licensed practical nurse ("LPN"), refused to allow Plaintiff to have any of his medications. Park also determined that Plaintiff had not been taking all of his medications as prescribed by counting the pills in each bottle and comparing the number of pills to the dates on the bottles.

Park testified in her deposition that it was a policy of the Jail not to allow inmates any drugs that were not considered life-sustaining. Pl.'s Ex. R at 27-28, 66. Park further testified that narcotics and mood stabilizers are not considered life-sustaining. Id. at 22, 27. Park also testified that she was "weary" of prisoners having any prescribed medications. Id. at 66. She stated that it was her understanding that a patient would have a prescription for narcotics "[f]or either pain management, or they're just addicted to them." Id. at 44. She believed that Plaintiff's medications were "Viagra-type pills." Id. at 42.

It does not appear that Park consulted a physician before taking Plaintiff off of his prescription medications. Park told Plaintiff he would have to see a doctor before he would be allowed to take any of his medications.

---

[1]Park was acting head nurse at the time Plaintiff was admitted to the Jail because the Jail did not have a registered nurse on staff. Pl.'s Ex. R at 16.

Defendants have submitted the Medical Policies and Procedures for Lincoln County Jail. The relevant policy states that for prescriptions filled prior to arrival at the Jail, "[t]he medication will not be dispensed unless it is a recent prescription and the prescribing doctor can verify it is a medication that is life sustaining for the inmate." Defs' Ex. 8 at 15. However, the policy does not state that an LPN may make medical judgments about prescription medications. The policy states, "All medical judgments are the sole province of the physician working for, or under contract to[,] the facility."

Plaintiff claims to have suffered from restlessness, edginess, nervousness, and increased physical pain for several weeks after Park took him off of his medications. Plaintiff attributes these symptoms to withdrawal from his pain medications.

Plaintiff asked officials on several occasions to see a doctor about his medications. During the initial portion of his confinement at the Jail, Plaintiff was not aware that medical requests could be made in writing. Plaintiff filed a written request to see a doctor in May or early June 2006.

The Jail did not have a formal system for filing grievances or medical requests. Prisoners used an informal system of sending "kites" to jail officials. Prisoners put the kites in their cell doors and the guards took them. The guards who took the kites from the doors did not give the prisoners any receipt for the kites, nor did the Jail have a record keeping system for the kites. Some were kept and some were thrown away, with each official deciding for himself or herself whether any particular kite was important enough to keep.

Plaintiff saw the Jail's physician, Dr. Richard Buckles, on May 16, 2006, which was twenty days after his arrival at the Jail. Plaintiff did not receive any medications until he saw Dr. Buckles. Dr. Buckles prescribed Plaintiff Zantac, for his upset stomach, and a B12 shot once a month, for a B12 deficiency. On following visits, Dr. Buckles prescribed amitriptyline, an antidepressant, and Lomotil, an anti-diarrheal, for Plaintiff.

Dr. Feinberg prepared a report and was deposed in preparation for this litigation. In her deposition, Dr. Feinberg testified that it is "extremely dangerous" to abruptly take a person off of narcotic medications, that it "could kill them." Pltff's Exh. R at 48. In her report, Dr. Feinberg stated her opinion that Plaintiff had a serious medical need for pain medication because, among other things, "[u]ntreated pain causes increased release of catecholamines, vasoconstriction, hypertension, accelerated heart disease, sleep disorder, mood disorder, and loss of functional capacity and progression of depression." Pltff's Exh. Q at 3. She further stated her opinion that Plaintiff "was not provided any medication at the Lincoln County Jail to address his serious medical need for pain medication." Id. at 2.

Plaintiff testified that after the Jail took away his pain medications, his functional capacity decreased. Plaintiff further testified that when he entered the Jail, he was able to walk well. Plaintiff further testified that he now must use a wheelchair or a cane to move about.

In late July 2006, another inmate, Muhammad Hill, began threatening Plaintiff. Before that, Plaintiff and Hill had gotten along well. Plaintiff testified that in mid-July, Hill

decided he wanted to be the "alpha" prisoner on D pod, and he began threatening Plaintiff and the other inmates when they tried to use the remote control for the television set.

Plaintiff testified that he handed kites to Defendants Holdmeyer, Korte, and Bonney about Hill:

> Sometime near the last day of July or the first day of August, I handed a written note – also known as a "kite" – to Defendant Holdmeyer. The kite detailed my fear of Muhammad Hill and asked that either Hill or I be moved to a different pod within the jail. On the same day, I wrote a similar kite and handed it to Defendant Korte. Again I expressed my fear that Muhammad Hill was going to attack him [*sic*]. That evening, I gave a kite to Defendant Bonney. For at least the third time, I expressed my concerns regarding Muhammad Hill and requested the [*sic*] either Muhammad Hill or I be moved.

Pl.'s Ex. E at 3.

Holdmeyer, Korte, and Bonney each testified that they did not remember whether Plaintiff handed them a kite expressing his fear of Hill.

Plaintiff also drafted a petition to Doyle, which was signed by about 13 other inmates on Plaintiff's pod, requesting that Hill be moved out of the pod. Plaintiff testified that he put the petition in his cell door for removal. Plaintiff testified an unidentified guard took the petition from his door.

On August 3, 2006, Hill entered Plaintiff's cell while he was sleeping. Hill attacked Plaintiff, hitting and kicking him in the face. After hitting Plaintiff a few times, Hill left Plaintiff's cell.

Plaintiff did not report the assault to any Jail official. Plaintiff says he was afraid of writing out a kite in case Hill saw him doing so.

Hill returned to Plaintiff's cell just after 3:00 p.m. and attacked him again. Plaintiff was asleep on his bunk with his back to the cell door at the time. Hill dragged Plaintiff's mat off of his bunk onto the floor, hitting Plaintiff's back on the railing of his bunk. Plaintiff says Hill then "started pouncing his knee off of my rib cages and off [his] right shoulder." Plaintiff claims he had trouble breathing because of rib pain.

Korte discovered the incident while it was occurring and separated Hill from Plaintiff. Korte reported that he discovered the assault at 3:10 p.m. Korte asked Plaintiff what happened, and Plaintiff replied, "It just happened and it's over."

Korte immediately took Plaintiff to the medical unit. Upon arrival, Plaintiff was seen and assessed by Defendant Cockrell, who is a registered nurse. Cockrell took Plaintiff's vital signs and applied cold compresses to Plaintiff's injuries. At about 3:50 p.m., X-rays of Plaintiff's chest, right shoulder, and left mandible were ordered. Thereafter, Plaintiff stayed in the medical unit under observation until Defendant Smith, the Jail's doctor at that time, could see him. Smith saw Plaintiff at about 6:50 p.m. Smith diagnosed Plaintiff as having multiple contusions and a possible rotator cuff tear in the right shoulder. Smith prescribed the continuous application of ice to Plaintiff's shoulder, and Tylenol and ibuprofen for Plaintiff's pain. X-rays were taken later that afternoon, and the X-ray report showed no fractures.

Smith saw Plaintiff again on August 9, 2006, and ordered continuation of the present therapy. Smith saw Plaintiff again on September 6, 2006, and continued the prescriptions for Tylenol and ibuprofen.

Dr. Feinberg stated, in her report, that in her opinion Plaintiff "was not provided any medication following the August 3, 2006, attack at the Lincoln County Jail to address his serious medical need for pain medication." Pltff's Exh. Q at 2.

Plaintiff brought this action pursuant to 42 U.S.C. § 1983. In Count I of the Amended Complaint, Plaintiff alleges that Defendants Holdmeyer, Bonney, Korte, Doyle, Duncan, Riffle, and Manhardt were aware that Plaintiff's housing assignment with Hill presented a serious risk and that Defendants were deliberately indifferent to the risk. In Count II of the Amended Complaint, Plaintiff alleges that Defendants Parks, Cockrell, and Doyle were aware of Plaintiff's serious need for pain medication and chronic pain but that these Defendants acted with deliberate indifference towards Plaintiff, denying him access to necessary medications. Plaintiff further alleges that Lincoln County has a policy against allowing pain medications and that the policy caused plaintiff to suffer unnecessarily.

**DISCUSSION**

1.    <u>Exhaustion of Remedies</u>

The Prison Litigation Reform Act requires that prisoners exhaust "such administrative remedies as are available" before bringing a claim in federal court. 42 U.S.C. § 1997e(a). Defendants argue that the complaint should be dismissed because Plaintiff failed to attach to his pleadings written documentation proving that he exhausted his administrative remedies before bringing these claims. Exhaustion of remedies is an affirmative defense, however, not a pleading requirement. <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007). Thus, Defendants, not Plaintiff, bear the burden on exhaustion, and Defendants have failed to introduce any

evidence showing Plaintiff did not exhaust his administrative remedies. Moreover, Defendants waived this defense by failing to include it in their answer. <u>See</u> Fed. R. Civ. P. 8(c). As a result, Defendants are not entitled to summary judgment on the basis that Plaintiff failed to exhaust administrative remedies.

2. <u>Failure to Protect Claim</u>

In Count I of the amended complaint, Plaintiff alleges that Holdmeyer, Bonney, Korte, Doyle, Duncan, Riffle, and Manhardt were deliberately indifferent to his safety in that they failed to protect him from the attack by inmate Muhammad Hill. Plaintiff also seeks relief from Lincoln County on this Count.

A. Claims against Lincoln County and Defendants in their official capacities

Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989). To state a claim against a municipality or a government official in his or her official capacity, Plaintiff must show that a policy or custom of the government entity is responsible for the alleged constitutional violation. <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-91 (1978).

Nothing in the record shows that Lincoln County had a policy or custom of not protecting pretrial detainees. Defendants have introduced the Lincoln County Jail Policy (the "Jail Policy") into the record. The Jail Policy includes an inmate classification system that is meant to provide for inmate safety by placing inmates in the most appropriate quarters

based on each inmate's individual needs. The Jail Policy also requires correctional officers to conduct security checks of the housing pods at least once an hour. As a result, Defendants are entitled to summary judgment on Plaintiff's failure to protect claims against Lincoln County and Defendants in their official capacities.

B.    Claims against Defendants in their Individual Capacities

Defendants argue that they are entitled to summary judgment on Plaintiff's failure-to-protect claims because Plaintiff has failed to show that they were aware of a risk to Plaintiff's safety and because they are entitled to qualified immunity.

Qualified immunity shields a government official from suit in his performance of a discretionary function unless that official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Eighth Amendment of the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has held that the Eighth Amendment requires prison officials to take "reasonable measures to guarantee the safety of inmates [and] . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (internal quotation marks and citations omitted).

For Plaintiff to prevail on his Eighth Amendment failure-to-protect claim, he must show: (1) that his continued incarceration in the D pod with Hill posed a substantial risk of serious harm, and (2) Defendants knew of and disregarded an excessive risk to Plaintiff's safety. See Pagels v. Morrison, 335 F.3d 736, 740 (8th Cir. 2003).

For purposes of summary judgment, Defendants have admitted that Plaintiff's incarceration with Hill posed a serious risk of harm. Therefore, the issue in this case is whether Plaintiff has established the second component of his failure-to-protect claim, i.e., that Defendants knew of and acted with deliberate indifference to Plaintiff's safety.

To satisfy the second component of this claim, a defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id. (quotation and citation omitted). Negligence on the part of a defendant is not sufficient to establish that he acted with deliberate indifference. Id. (citation omitted). For a defendant to act with deliberate indifference, he must have recklessly disregarded a known, excessive risk of serious harm to a plaintiff's safety. Id. (citation omitted).

Defendants argue that the case law in this Circuit states that threats between inmates are common and do not serve to impute actual knowledge of a substantial risk of harm. Defendants rely on Prater v. Dahm, 89 F.3d 538 (8th Cir. 1996), and Pagels, to support this position. In Prater, the plaintiff had a relationship with another inmate's separating wife. 89 F.3d at 540. On arrival at the prison, plaintiff informed the officials that he did not have a problem with the other inmate, who was named Penn. Id. Immediately thereafter, Penn threatened plaintiff. Id. An official spoke with Penn, and Penn assured the official that there would be no further problems between the two inmates. Id. Plaintiff was temporarily assigned to another facility, and two weeks after he returned he was assaulted by Penn. Id.

The United States Court of Appeals for the Eighth Circuit found that in these circumstances it was proper to grant summary judgment in favor of the prison official:

> As an initial matter, Prater has alleged no facts from which an inference could be made that the prison officials actually knew of the risk to Prater. Although Prater's pleadings allege that he was threatened by Penn, threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm. In all other respects, the pleadings reflect the absence of a reason for alarm on the part of the officials. Prater's complaint admits that the prison officials had assurances from both inmates that there would be no trouble. Furthermore, Prater does not dispute the fact that, despite the threats, he and Penn were incarcerated together for a substantial period of time without incident. Under the circumstances, the two-week period between Prater's return to [the Omaha Correctional Center] and the altercation was in itself a sufficient time for prison officials to believe that Prater was not, in fact, in danger. Thus, Prater's own version of the prison officials' conduct does not establish the level of subjective knowledge required for a violation of Prater's clearly established Eighth Amendment rights

Id. at 541-42. The court further found that defendants had acted reasonably after the threats were made: they questioned both inmates about the threats and received assurances from Penn that there would not be any further problems between the two inmates. Id. at 542.

In Pagels, the plaintiff was assaulted by his cellmate and another inmate. Plaintiff had written a letter to the defendant that his cellmate told plaintiff he was going to "f— him up" because plaintiff would not let him use his television and because plaintiff would not allow his cellmate to hide a handcuff key or tattoo gun in their cell. 335 F.3d at 739. Plaintiff further wrote that his cellmate and another inmate were planning an escape and he wanted defendant to know that he had nothing to do with the contraband. Id. Plaintiff finally stated that he was "'not worried about getting beat up or anything like that. I'm just covering my butt . . .'" Id. The United States Court of Appeals for the Eighth Circuit found that plaintiff

had fallen short of demonstrating that defendant had actual knowledge of a serious risk of harm to plaintiff because plaintiff specifically stated in his letter that he was not worried about getting beat up.  Id. at 740.  Further, defendant had testified that "he was not seriously concerned about a fight and that [plaintiff's] allegations were common to 'inmates who are trying to arrange a room move.'"  Id. at 741.  Finally, the court found that defendant had acted in an objectively reasonable way in that he had investigated the letter and subsequent incidents and found no indication of further danger to the plaintiff.  Id.

The Court finds Prater and Pagels to be distinguishable from the facts in this case. In both cases, defendants conducted a reasonable investigation of both the threats and the circumstances surrounding the threats.  And in both cases, the circumstances surrounding the threats led to an inference that the plaintiffs were not in danger of serious injury.  In this case, no Defendant conducted an investigation into the threats Hill made toward Plaintiff. And no Defendant testified that he considered the circumstances and determined that Plaintiff was not in serious danger of injury.  As a result, Prater and Pagels offer little guidance for this case.  However, the question remains as to whether a genuine question of material fact exists as to whether Defendants were aware of an actual risk to Plaintiff.

Plaintiff has demonstrated that a genuine question of material fact exists regarding whether Defendants Holdmeyer, Korte, or Bonney were aware of but disregarded the threats Hill made against Plaintiff.  Plaintiff says he handed these Defendants kites explaining his fear of Hill and requesting that one of them be moved to a different housing pod.  These Defendants testified that they cannot remember receiving any such kites, but they did not

definitively testify that they did not, in fact, receive them. Defendants' inconsistent handling of inmates' kites undercuts their position, for they have no way of showing what they did with the kites. The issue essentially boils down to Plaintiff's word against Defendants', which is an issue for the jury to decide. Furthermore, these Defendants are not entitled to qualified immunity because Plaintiff's right to be free from an excessive risk of harm was clearly established at the time of the incident.

Plaintiff argues that circumstantial evidence demonstrates that Defendants Manhardt, Riffle, and Duncan were aware of Hills threats towards him. See Farmer v. Brennan, 511 U.S. 825, 842 (1970) ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence."). Manhardt and Riffle were Bonney's Sergeants. Duncan was Korte's and Holdmeyer's Sergeant. Manhardt, Riffle, and Duncan testified that they instructed their inferiors to routinely bring inmates' kites to them, and they further testified that they responded to the kites they received. Plaintiff argues that since he handed kites detailing his fear of Hill to Holdmeyer, Korte, and Bonney, it follows that Manhardt, Riffle, and Duncan should have received those kites and been aware of the threats towards Plaintiff. The Court disagrees. The connection is simply too tenuous and requires too many assumptions to create a triable fact for a jury. Plaintiff cannot show that the kites were actually delivered to these Defendants. Plaintiff has not, therefore, demonstrated that a material question of fact exists as to whether these Defendants had knowledge of Hill's

threats towards Plaintiff. As a result, these Defendants are entitled to summary judgment on Plaintiff's failure to protect claim.

Plaintiff further argues that Doyle must have been aware of the threats made by Hill because he addressed the petition to Doyle and it was removed from his cell door by an unidentified guard. Again, the Court finds that Plaintiff cannot show that the petition was actually delivered to Doyle, and therefore, Plaintiff cannot show that Doyle had actual knowledge of the threats. As a result, Doyle is entitled to summary judgment on Plaintiff's failure to protect claim.

3.    Denial of Medical Care

In Count II of the amended complaint, Plaintiff alleges that Parks, Cockrell, and Doyle were deliberately indifferent to his serious medical needs when they refused to allow Plaintiff to receive his prescribed medications. Plaintiff also seeks relief from Lincoln County on this Count.

Defendants argue that they are entitled to summary judgment on Plaintiff's medical mistreatment claims because Plaintiff was provided with adequate medical care and Plaintiff's complaints essentially constitute a mere disagreement about the care he received.

The Eighth Circuit applies to pretrial detainees "the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates." Vaughn v. Greene County, Ark., 438 F.3d 845, 850 (8th Cir. 2006).

> "Under this standard, an official is deliberately indifferent (reckless) if he disregards a known risk to a prisoner's health. To establish a constitutional violation, it is not enough that a reasonable official should have known of the

> risk.  Rather, a Plaintiff must demonstrate the official actually knew of the risk
> and deliberately disregarded it."

Id. (citations and quotations omitted).  "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed.  However, a showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions."  Peitrafeso v. Lawrence Cnty., S.D., 452 F.3d 978, 983 (8th Cir. 2006). Additionally, qualified immunity  protects "all but the plainly incompetent or those who knowingly violate the law."  Vaughn, 438 F.3d at 850.

"A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  Cambreros v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Denial of medical care that results in "unnecessary suffering is inconsistent with contemporary standards of decency" and violates the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 103 (1976).  Withdrawal from narcotics may constitute a "significant medical issue" under the Eighth Amendment.  Davis v. Carter, 452 F.3d 686 (7th Cir. 2006).

To prevail against Lincoln County, Plaintiff must show that a policy or custom of the government entity is responsible for the alleged constitutional violation.  Monell, 436 U.S. at 690-91.

The Court first finds that there is a genuine issue of material fact as to whether Plaintiff suffered from an objectively serious medical need.  Plaintiff had been diagnosed by

Dr. Feinberg as having chronic pain. And Dr. Feinberg found it necessary to prescribe two separate narcotic medications to adequately treat Plaintiff's chronic pain. Furthermore, it should be apparent to a layperson that taking a patient off of prescribed narcotics without weaning them off could be dangerous to the patient, and Defendants do not contend otherwise. As a result, the first prong of the deliberate indifference standard has been met for purposes of summary judgment.

As to Park, in her individual capacity, the Court finds that there is a genuine question of material fact as to whether she knew of, but deliberately disregarded, Plaintiff's serious medical needs. Park testified that she had a personal dislike for prisoners' prescription medications. And Park felt that Plaintiff's medications were no more important than Viagra. Further, it does not appear that Park consulted a physician before taking away Plaintiff's medications. Although Park testified that she was merely following Jail policy, it does not appear that she attempted to have Plaintiff seen by the physician in a reasonable amount of time to allow his treatment to be continued. It appears that Park was the only medical staff that Plaintiff had contact with from his admission to the Jail until May 16, 2006, about three weeks later, during which time Plaintiff allegedly suffered from withdrawal symptoms and his chronic pain went untreated. As a result, the Court finds that there is a genuine issue of material fact as to whether Park, in her individual capacity, knew of but deliberately disregarded Plaintiff's serious medical needs. Additionally, Park is not entitled to qualified immunity. See Moore v. Duffy, 255 F.3d 543, 545 (8th Cir. 2001) (disputed question of

material fact on deliberate indifference claim sufficient to overcome qualified immunity defense).

As to Lincoln County and Park, in her official capacity, the Court finds that there is a genuine question of material fact as to whether the Jail's medical policy caused Plaintiff to suffer unnecessary pain. As is stated above, the relevant policy states that for prescriptions filled prior to arrival at the Jail, "[t]he medication will not be dispensed unless it is a recent prescription and the prescribing doctor can verify it is a medication that is life sustaining for the inmate." Defs' Ex. 8 at 15. Park testified that she took this to mean that Plaintiff had to be taken off of his pain medications and mood stabilizers. A question of fact exists as to whether this policy caused Plaintiff to suffer unnecessarily for the first three weeks of his incarceration, until he was seen by a physician. As a result, Lincoln County and Park, in her official capacity, are not entitled to summary judgment.

As to Cockrell, the Court finds that Plaintiff has failed to demonstrate that she knew of but disregarded his serious medical condition. When Plaintiff was assaulted by Hill, Cockrell immediately evaluated Plaintiff, gave him cold compresses, and notified the physician. Although Plaintiff complains that he sent numerous medical requests to Cockrell about needing pain medications, Plaintiff was under the care of a physician at that time and Cockrell did not have the authority to manage Plaintiff's medications. As a result, the Court finds that Cockrell is entitled to qualified immunity.

Finally, Plaintiff has failed to demonstrate that Doyle was directly involved in or personally responsible for Plaintiff's unnecessary suffering. "Liability under § 1983 requires

a causal link to, and direct responsibility for, the alleged deprivation of rights." <u>Madewell v. Roberts</u>, 909 F.2d 1203, 1208 (8th Cir. 1990); <u>see</u> <u>also</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to <u>Bivens</u> and §1983 suits, a Plaintiff must plead that each Government-official Defendant, through the official's own individual actions, has violated the Constitution."). Although Plaintiff says he sent two grievances to Doyle, Plaintiff did not have a constitutionally protected right to have his grievances redressed. As a result, Doyle is entitled to qualified immunity.

Accordingly,

**IT IS HEREBY ORDERED** that the motion for summary judgment [Doc. #109] is **GRANTED** in part and **DENIED** in part. Summary judgment is **GRANTED** in favor of Defendants Doyle, Cockrell, Manhardt, Duncan, and Riffle. Summary judgment is further **GRANTED** in favor of Lincoln County on Plaintiff's failure to protect claims. Summary judgment is **DENIED** as to Defendants Holdmeyer, Korte, and Bonney on Plaintiff's failure to protect claim. Summary judgment is **DENIED** as to Defendants Park and Lincoln County on Plaintiff's medical mistreatment claims.

Dated this 8th day of March, 2011.

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE